# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LAURA KINCAID, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-15-385-SPS |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration,[1] | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Laura Kincaid requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision is hereby REVERSED and the case REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of

---

[1] On January 20, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Berryhill is substituted for Carolyn W. Colvin as the Defendant in this action.

such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[2] Step One requires the claimant to establish that she is not engaged in substantial gainful activity. Step Two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born May 8, 1992, and was twenty-one years old at the time of the administrative hearing (Tr. 26). She has a high school education, some college, and vocational training in nail technology, and has worked as a storage laborer, sales clerk, and stocker (Tr. 27, 38-39). The claimant alleges that she has been unable to work since June 16, 2010, due to schizophrenia (Tr. 136, 140, 164).

## Procedural History

On May 2, 2012, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ Doug Gabbard, II conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated June 17, 2014 (Tr. 12-20). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at steps four and five of the sequential evaluation. He found that the claimant retained the residual functional capacity ("RFC") perform unskilled work, defined as work that needs little or no judgment to do simple duties that can be learned on the job, at all exertional levels with the following limitations:

(i) occasional understanding, remembering, and completing detailed instructions; (ii) simple, direct, and concrete supervision; (iii) interpersonal contact with supervisors and co-workers incidental to the work performed, *e. g.*, assembly work; and (iv) no contact with the general public (Tr. 16). The ALJ concluded that the claimant was not disabled because she could return to her past relevant work as a store laborer, and alternatively because there was work that she could perform in the national economy, *e. g.*, auto detailer, janitor, bundle clerk, and window cleaner (Tr. 19-20).

## Review

The claimant contends that the ALJ erred by failing to consider all of the evidence related to her mental impairment in making his RFC findings. The Court agrees and the decision of the Commissioner must be reversed and the case remanded for further proceedings.

The ALJ determined that the claimant had the severe impairments of "affective, anxiety and schizophrenia, and other psychotic disorders." (Tr. 15). The medical record reveals that the claimant was involuntarily admitted to St. Francis Hospital and Health Services on June 16, 2010 (Tr. 419-448). Upon admission, she made no eye contact; her speech was hyper-verbal, pressured, and nonsensical; and her affect was irritable, expansive, labile, and inappropriate (Tr. 423). The claimant was stabilized and discharged on June 28, 2010**,** in improved status with diagnoses of major depressive disorder, severe, recurrent with psychotic features and posttraumatic stress disorder (Tr. 421). The following month, the claimant was admitted to Griffin Memorial Hospital for depression and confusion (Tr. 486-501). Upon admission, she was paranoid, looked

somewhat confused, and had a flat affect with crying spells, poor insight, and poor judgment (Tr. 486).  Dr. A. Sameer Mohammed noted the claimant showed a remarkable improvement in her thought process once she resumed medication (Tr. 487).  Dr. Mohammed discharged the claimant on August 18, 2010, and diagnosed her with psychosis not otherwise specified (Tr. 488).  The claimant had some follow up in the fall of 2010, and received counseling for depression, paranoia, and obsessive-compulsive disorder from May 2011 through August 2011 (Tr. 558-62, 574-77).

On August 3, 2011, the claimant presented to Dr. William Mings for treatment, reporting no psychotic episodes or delusions since she began taking medication (Tr. 596-97).  Dr. Mings noted the claimant had a moderately restricted, euthymic affect; fluent, but mildly sparse speech; no pressured thoughts; and intact memory, concentration, and judgment (Tr. 597).  He diagnosed the claimant with psychotic disorder not otherwise specified, and assessed a GAF score of fifty-five (Tr. 597).  Dr. Mings frequently noted that the claimant's affect was calm and appropriate, her mood matched her affect, her speech was coherent, and her thoughts were oriented, but on September 21, 2011, the claimant reported that she stopped taking her medication ten days earlier, and Dr. Mings noted her affect and mood were depressed/sad and tearful (Tr. 598, 600-03, 605).

State agency psychologist Mark Schade, Ph.D., reviewed the record and completed a Mental Residual Functional Capacity Assessment ("MRFC") on June 27, 2012 (Tr. 646-48).  Dr. Schade found that the claimant was markedly limited in her ability to understand, remember, and carry out detailed instructions, and in her ability to interact with the general public (Tr. 646-47).  He concluded that she could perform

simple tasks with routine supervision, relate to supervisors and peers on a superficial work basis, and adapt to a work situation, but could not related to the general public (Tr. 648).

On September 17, 2012, the claimant presented to Dr. James Jura, and reported confusion, difficulty understanding people, and paranoia, and that she had been on and off her medications "for a while." (Tr. 667). Dr. Jura noted the claimant had a restricted/blunted affect, tight but slightly tangential thought process, fair to poor insight, and fair judgment (Tr. 687). He diagnosed the claimant with paranoid schizophrenia, and noted that she did not initially "describe an understanding of schizophrenia." (Tr. 667). At a follow up appointment on October 1, 2012, Dr. Jura indicated that he discussed the diagnosis of schizophrenia with the claimant and her mother (Tr. 666). On November 5, 2012, the claimant reported decreasing the dosage of her medication, and on December 10, 2012, she reported stopping it entirely (Tr. 677-78). Dr. Jura completed a Medical Source Statement ("MSS") on December 11, 2012, wherein he opined that the claimant's affect was residually flat due to her schizophrenia, and described her functional limitations as follows: (i) daily activities 2/10; (ii) maintaining social functioning 4/10, (iii) deficiencies of concentration, persistence, or pace 5/10; and repeated episodes of deterioration in a work-like setting 9/10 (Tr. 676).

On January 29, 2013, the claimant requested services through Mental Health Services of Southern Oklahoma ("MHSSO") (Tr. 731-40). She reported managing her symptoms, but that she had no medications since moving back to Oklahoma (Tr. 735). Her treatment goal was ". . . getting off . . . meds and some coping skills. I don't want to

be on meds the rest of my life." (Tr. 737). The provider diagnosed the claimant with bipolar disorder, single manic episode, severe, specified as with psychotic disorder; anxiety disorder; overanxious disorder; and assessed a GAF score of fifty-two (Tr. 738). The provider indicated that the claimant may not be truthful about her emotions, symptoms, and the reality of her need for medications (Tr. 740).

At the administrative hearing, the claimant testified as to her past work history, her impairments, and her medical treatment (Tr. 416-442). She stated she was unable to work because her medication is ineffective when she gets overly stressed, which in turn results in difficulty talking correctly and understanding things (Tr. 33). The claimant testified that she usually tells her doctors she is "doing good" because she is not comfortable with them, is concerned about additional inpatient stays, and is worried they will increase the dosage of her medication (Tr. 34). The claimant stated her medication causes her to faint every once in a while, become either hypo or hyper-glycemic, urinate frequently, blink frequently, and have twitching in her legs (Tr. 37).

In his written decision, the ALJ summarized some of the medical evidence and the claimant's hearing testimony. The ALJ largely used the claimant's hospitalizations as reasons to discredit her, noting that her "medications greatly reduced her reported symptoms." (Tr. 17). Despite the repeated notations in the record where the claimant attempted to reduce or eliminate the use of her medications on her own and informed providers of her dislike of her medications, the ALJ found that she had "not told her providers that her medications [were] not working or that she has significant side effects." (Tr. 18). In discussing the opinion evidence, the ALJ gave little weight to Dr.

Jura's MSS because his description of her limitations was too vague, and because it was inconsistent with unspecified medical records (Tr. 18). Notably, the ALJ did not recognize that this MSS was signed by treating physician Dr. Jura (Tr. 18). The ALJ then gave great weight to the state agency psychologist's opinion, although it pre-dates Dr. Jura's assessment and the January 2013 intake assessment at MHSSO which both indicate serious concerns about her impairments, that the claimant could do simple work with her marked limitations in her ability to understand, remember, and complete detailed tasks, and in her ability to interact with the public, because it was consistent with the claimant's conservative treatment and reported lack of symptoms at appointments with her medical providers (Tr. 18).

The Court agrees with the claimant that the ALJ erred in formulating the claimant's RFC. "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e. g.*, laboratory findings) and nonmedical evidence (*e. g.*, daily activities, observations)." Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 (July 2, 1996). "When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination." *Jagodzinski v. Colvin*, 2013 WL 4849101, at *2 (D. Kan. Sept. 11, 2013), *citing Brown v. Commissioner of the Social Security Administration*, 245 F. Supp. 2d 1175, 1187 (D. Kan. 2003).

As an initial matter, the ALJ adopted the state agency psychologist's opinion as to the claimant's psychologically-based limitations, but neither the ALJ nor the state agency

psychologist linked any evidence in the record to show how such limitations account for the claimant's severe impairment of schizophrenia. *See, e. g., Timmons v. Barnhart*, 118 Fed. Appx. 349, 353 (10th Cir. 2004) (finding the ALJ should have "explained how a 'severe' impairment at step two became 'insignificant' at step five."); *Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir. 2008) ("In deciding Ms. Hamby's case, the ALJ concluded that she had many severe impairments at step two. He failed to consider the consequences of these impairments, however, in determining that Ms. Hamby had the RFC to perform a wide range of sedentary work."). Additionally, in finding the claimant's medication effectively controlled her mental impairments, the ALJ ignored the following evidence: (i) the multiple references to the claimant's lack of insight into her mental impairment made by providers (Tr. 444, 473, 667, 694, 740, 742); (ii) the claimant's sporadic and inconsistent mental health treatment (Tr. 558-605, 666-70, 677-78, 691-704, 727-50); and (iii) the numerous instances where the claimant requested a lower dose of her medication, unilaterally reduced her dose, or stopped taking her medication entirely (Tr. 567, 605,677-78, 691, 703, 729, 735, 738, 742). It was error for the ALJ to "pick and choose" in this way, *i. e.*, to cite findings supportive of his own determination while disregarding unsupportive findings. *See, e. g., Hardman v. Barnhart,* 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence.").

Moreover, the ALJ failed to properly weigh Dr. Jura's assessment of the claimant's impairments that were part of her psychiatric progress notes from Samaritan

Counseling Center. "An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) [internal citation omitted], *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003) [quotation marks omitted], *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). Here, not only did the ALJ fail to analyze Dr. Jura's opinion in accordance with the *Watkins* factors outlined above, he also failed to identify Dr. Jura as the author of the December 2012 MSS (Tr. 18). This was particularly important because Dr. Jura's MSS appears to indicate the presence of significant functional limitations. Indeed, as noted above, most of the analysis at step four seemed an attempt to undermine the claimant's complaints related to her severe mental impairments, essentially calling into question the findings of severity at step two.

The ALJ compounded these errors when he further failed to consider whether the claimant had an acceptable reason for failing to follow her prescribed treatment, which could include her schizophrenia. In considering the impact of failure to follow treatment, the ALJ must follow a four-part test: (i) whether treatment would have restored the claimant's ability to work; (ii) whether treatment was prescribed; (iii) whether treatment was refused; and (iv) whether the excuse was justified. *Frey v. Bowen*, 816 F.2d 508, 517 (10th Cir. 1987), *citing Weakley v. Heckler*, 795 F.2d 64, 66 (10th Cir. 1986), *quoting Teter v. Hecker*, 775 F.2d 1104, 1107 (10th Cir. 1985). In this case, however, the ALJ failed to discuss *any* of these factors in relation to his finding that claimant was noncompliant with medical treatment, which is particularly important with mental impairments such as the claimant's. *See, e. g., McCleave v. Colvin,* 2013 WL 4840477, at \*6 n. 6 (W.D. Okla. Sept. 10, 2013) (requiring the ALJ to address on remand whether a claimant's bipolar disorder was an acceptable reason for noncompliance with prescribed psychotropic medications), *citing* 20 C.F.R. §§ 404.1530(c), 416.930(c) *and Jelinek v. Astrue,* 662 F.3d 805, 814 (7th Cir. 2011) ("ALJ's assessing claimants with bipolar disorder must consider possible alternative explanations before concluding that non-compliance with medication supports an adverse credibility inference.").

Because the ALJ failed to properly analyze evidence of record as to the claimant's mental limitations, the Commissioner's decision must be reversed and the case remanded for further analysis by the ALJ. If such analysis results in adjustments to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the decision of the Commissioner is therefore not supported by substantial evidence. The decision of the Commissioner of the Social Security Administration is accordingly hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

DATED this 27th day of March, 2017.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**